UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

No. 11 Civ. 5466 (RJS)

———————————

JOSE ANDUJAR,

Plaintiff,

VERSUS

THE CITY OF NEW YORK, *ET AL.*,

Defendants.

———————————

MEMORANDUM AND ORDER
October 16, 2012

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jose Andujar ("Plaintiff") brings this action against the City of New York, Raymond W. Kelly in his official capacity as Commissioner of the New York City Police Department ("NYPD"), two police officers in their official capacities, and five additional police officers in their official and individual capacities (collectively, "Defendants"), asserting that Plaintiff's arrests for the sale of politically themed condoms violate: (1) Plaintiff's First Amendment right to free speech; and (2) section 20-453 of the New York City Administrative Code (the "Administrative Code"), as applied to Plaintiff. Before the Court is Defendants' motion to dismiss this action pursuant to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) (the "*Younger* doctrine"). For the reasons that follow, the Court grants Defendants' motion.

I. BACKGROUND

A. Facts[1]

Plaintiff sells condoms on the streets of New York in wrappers containing images of high-profile political figures such as President Barack Obama, Senator John McCain, and former Governor Sarah Palin. (Compl. 1 ¶ 2.)[2] Selling merchandise on

---

[1] The following facts are taken from the Complaint and the documents referenced therein. In consideration of Defendants' motion to dismiss, the Court also considers Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defs.' Br."), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Br."), and the declarations and exhibits attached thereto, submitted in connection with Defendants' motion.

[2] Because the Complaint contains multiple paragraphs bearing the same number, the Court

New York City streets typically requires a general vendor's license, pursuant to the Administrative Code. N.Y.C. Admin. Code § 20-453. The Administrative Code makes an exception, however, for vendors who sell "only newspapers, periodicals, books, pamphlets or other similar written matter." *Id.* Plaintiff does not have a license to sell his politically themed condoms but has a letter from the New York City Department of Consumers Affairs explaining "that it has construed the written matter exception to apply to 'items bearing political messages' such as 't-shirts, buttons[,] and flags.'" (Compl. 4 ¶ 20.)

On September 20, 2010, NYPD Officers arrested Plaintiff and issued him a Desk Appearance Ticket ("DAT") for unlicensed general vending, in violation of section 20-453. (*Id.* at 5 ¶ 7.) On February 28, 2011, Judge Lynn Kotler of the New York City Criminal Court, New York County, dismissed the charge on the grounds that Plaintiff's condoms fell within section 20-453's written matter exception. (*Id.* at 5 ¶ 10.)

On May 12, May 27, June 14, June 21, and July 1, 2011, NYPD officers again arrested Plaintiff, each time issuing him a DAT and confiscating his inventory. (*Id.* at 5–6 ¶¶ 12, 16–21.) Those charges were subsequently consolidated within one case, which went to trial before Judge Anthony Ferrara of the New York City Criminal Court, New York County, on October 21 and October 25, 2011. (*See* Pl.'s Br. 2; Def.'s Br. 2.) On October 26, 2011, Plaintiff was convicted of four counts of violating section 20-453. (*Id.*) On November 12, 2011, Plaintiff appealed his conviction to the New York State Supreme Court, Appellate Term, First Department (the "First Department"). (*Id.*) That appeal remains pending.

B. Procedural History

On August 5, 2011 – before Plaintiff's state criminal conviction, now on appeal – Plaintiff filed the instant action. In his Complaint, Plaintiff seeks relief from this Court declaring that Defendants' conduct violated the First Amendment of the United States Constitution and section 20-453 of the Administrative Code. Plaintiff also seeks to enjoin Defendants from enforcing section 20-453 in connection with the sale of politically themed condoms.

On April 30, 2012, Defendants filed the instant motion to dismiss, pursuant to the *Younger* doctrine. The motion was fully submitted as of May 30, 2012, and on July 11, 2012, the Court heard oral argument on the motion.

II. DISCUSSION

The *Younger* doctrine requires federal courts, absent extraordinary circumstances, "to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see Younger*, 401 U.S. at 41 (describing "the national policy forbidding federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings except under special circumstances"). The doctrine, founded on basic notions of federalism, requires "the federal court [to] stay its hand" out of "proper respect for the ability of state courts to resolve federal questions presented in state court litigation." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

---

denotes citations to the Complaint with both page and paragraph numbers ("Compl. _ ¶ _").

Absent exceptional circumstances, such as "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," *Younger*, 401 U.S. at 54, dismissal of an action in federal court pursuant to the *Younger* doctrine is required when three conditions are met: "(1) there [is] an ongoing state proceeding; (2) an important state interest [is] implicated [in that proceeding]; and (3) the plaintiff ha[s] an avenue open for review of constitutional claims in the state court," *Grieve v. Tamerin,* 269 F.3d 149, 152 (2d Cir. 2001) (internal quotation marks omitted). The Court proceeds to address each of these conditions in turn.

### A. Ongoing State Proceeding

The parties disagree as to whether Plaintiff's appeal of his conviction constitutes ongoing state action sufficient to satisfy the first *Younger* condition. The Supreme Court has unequivocally stated that:

> [w]hen [a state court has entered judgment] in a proceeding to which *Younger* applies . . . the losing party cannot . . . pursue equitable remedies in federal district court while concurrently challenging the trial court's judgment on appeal. For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368–69 (1989); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("[A] necessary concomitant of [*Younger*] is that a party . . . must exhaust his state appellate remedies before seeking relief in the [d]istrict [c]ourt, unless he can bring himself within one of the exceptions specified in [*Younger*]."); *Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000) ("[A] state proceeding which [plaintiff] seeks to challenge in federal court must first exhaust all available state appellate remedies – unless, of course, an exception to *Younger* applies or other *Younger* prerequisites are not met."). In light of this clear precedent, Plaintiff's argument – that the criminal proceedings against him are "for all intents and purposes over" because the case is on appeal (Pl.'s Br. 4) – is untenable.

Plaintiff nonetheless argues that *New Orleans Public Service* and its progeny are inapposite because he seeks to enjoin *future*, rather than present, state action. (*Id*.) In *Younger*, the Supreme Court avoided this very question – namely, whether the newly created abstention doctrine also applied to injunctions against future state action. *Younger*, 401 U.S. at 41 (noting that the Court held "no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun"). The Supreme Court has subsequently articulated that an injunction of "wholly prospective" criminal prosecution is not barred by *Younger*. *Wooley v. Maynard,* 430 U.S. 705, 711 (1977). Thus, *Younger* abstention does not apply when "'state judicial proceedings have not themselves commenced.'" *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238–39 (1984)).

Consistent with this rule is *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), which Plaintiff asserts is on all fours with his case. (Tr. of July 11, 2012 Oral Arg. ("Tr.") 9 (emphasis added).) It is not. The Supreme Court in *Doran* did find that, "on the facts of

3

[that] case[,] the issuance of [such] a preliminary injunction [was] not subject to the restrictions of *Younger*." *Doran*, 422 U.S. at 930. However, it immediately went on to hold that:

> [t]he principle underlying [*Younger*] . . . is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. *In the absence of such a proceeding*, however, . . . a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction.

*Id.* (emphasis added). The Supreme Court further explained that issuance of a preliminary injunction was proper precisely because there were "*no criminal proceedings . . . pending*" against the parties who sought the injunction. *Id.* at 923 (emphasis added). *Doran*, therefore, stands for the unremarkable proposition that a plaintiff may challenge the constitutionality of a state statute in federal court, including by seeking an injunction to stop future criminal prosecution, in the *absence* of an ongoing state criminal proceeding. *See, e.g.*, *Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1201 (2d Cir. 1977) (citing *Doran* for its holding that *Younger* abstention was "misplaced" because there was no "ongoing . . . or even contemplated . . . state proceeding with which the federal action interfere[d]"). *Doran* is not, however, applicable where, as here, a plaintiff seeks prospective relief during the pendency of a state prosecution.

While neither the Supreme Court nor the Second Circuit has squarely addressed *Younger* abstention under such circumstances, several other circuits have. Relying on the federalism concerns that motivate the *Younger* doctrine, these circuits have held that when a state prosecution *is* pending, claims of injunctive relief seeking to enjoin future prosecutions still trigger the *Younger* doctrine. *See, e.g.*, *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 53 (4th Cir. 1989); *Ballard v. Wilson, 856 F.2d 1568, 1570* (5th Cir. 1988); *United Books, Inc. v. Conte*, 739 F.2d 30, 32–33 (1st Cir. 1984). For example, the Fifth Circuit, echoing the First, has held:

> any injunction or declaratory judgment [against future state action] issued by a federal court would affect the course and outcome of the pending state proceedings. An injunction would "serve notice to the state courts that an adverse declaratory judgment could be expected," and a declaratory judgment as to the constitutionality of the ordinance would actually resolve an issue central to the pending state proceedings.

*Ballard*, 856 F.2d at 1570 (quoting *United Books*, 739 F.2d at 33). The potential of the federal court's ruling to influence the state court's judgment is therefore "precisely the sort of interference condemned by the Supreme Court in *Younger*." *Id.*

In the case at bar, the injunction that Plaintiff seeks is not wholly prospective because there is an ongoing state proceeding, which the federal action could influence, if not completely dispose of. Permitting the instant federal action to proceed would clearly interfere with this state proceeding. Indeed, as Plaintiff acknowledges, the federal and state cases

4

are so closely related that if Plaintiff prevailed in this Court, it would "render [his state criminal] conviction moot and influence the decision on appeal." (Pl.'s Br. 4.)[3] Plaintiff's claims in this Court thus satisfy the first *Younger* condition because Plaintiff's claims are not wholly prospective.

### B. Important State Interest

Plaintiff does not dispute that the second condition – whether an important state interest is implicated in the proceeding – has been met. (*See* Pl.'s Br. 5.) Therefore, the Court turns to the third *Younger* condition.

### C. Opportunity for Review of Constitutional Claims

The parties dispute whether the pending state proceeding affords Plaintiff an opportunity for judicial review of his constitutional claims. However, because Plaintiff has filed an appeal of "each and every aspect of [his] October 26, 2012 conviction" (Defs.' Br. 5), it appears that he will be able to raise his First Amendment challenge to his conviction before the First Department.[4]

Plaintiff nevertheless argues that the Court should not dismiss the instant action because the state court may avoid the constitutional question altogether, resolving the case on state statutory grounds instead. (Pl.'s Br. 6.) This argument, however, actually strengthens the case for *Younger* abstention. The Second Circuit has held that "an 'important reason for [*Younger*] abstention is to avoid unwarranted determination of federal constitutional questions' where it is possible that state courts may resolve the case on state law grounds 'without reaching the federal constitutional questions.'" *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 79–80 (2d Cir. 2003) (quoting *Pennzoil*, 481 U.S. at 11–12); *cf. Jones v. United States*, 529 U.S. 848, 857 (2000) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." (internal quotation marks omitted)).

Even more importantly, "[t]he relevant question under *Younger* is whether the state's procedural remedies *could* provide the relief sought[,] [not] . . . whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Spargo*, 351 F.3d at 79 (citations omitted; emphasis added). Thus, for a federal court to abstain, it need not find that the state court will rule on every question presented, that it will rule in Plaintiff's favor, *id.*, or that "the procedures for the interposition of the federal defense be as advantageous in the state court as in the federal action," *Kirschner*, 225 F. 3d at 235.

Plaintiff also argues that dismissing pursuant to *Younger* would be improper because the state court is powerless to grant

---

[3] In challenging his arrests during his criminal trial, Plaintiff argued both that the First Amendment protects his vending of politically themed merchandise and that the "written matter" exception to section 20-453 allows him to sell the condoms without a general vendor's license because the condoms are "printed matter." (Defs.' Br. 2.) These challenges now form the basis of Plaintiff's appeal of his criminal conviction before the First Department. (*Id.* at 2–3.)

[4] Plaintiff will also be able to argue, pursuant to section 170.35 of the New York Criminal Procedure Law, that the accusatory instrument against him should be dismissed as defective because the "statute defining the offense charged is unconstitutional." N.Y. Crim. Proc. Law § 170.35(1)(c) (McKinney 1972); (*see* Defs.' Br. 5).

5

the specific injunctive relief Plaintiff seeks.[5] The Court finds this argument unpersuasive. Whether or not the state court could grant an injunction is immaterial because an injunction prohibiting future enforcement against Plaintiff would be unnecessary if Plaintiff prevailed in the First Department. As Defendants noted at oral argument, should the First Department find for Plaintiff:

> [Plaintiff] will have achieved a binding decision that will bind every trial judge in the New York County branch of the New York City criminal court, which means that any prosecution for the conduct being addressed in this case and the state proceeding [will not be] maintainable. . . . [T]here would be no reason to arrest him because the case would never be arraigned and the case if [Plaintiff was] arraigned would be instantly dismissed. The accusatory instrument would be rejected as defective.

(Tr. 7.)

The Court agrees. *Cf. People v. Acevedo*, 69 N.Y.2d 478, 484–85 (1987) ("[C]ollateral estoppel, or issue preclusion, operates in a criminal prosecution to bar relitigation of issues necessarily resolved in defendant's favor at an earlier trial. . . . [I]t would be inequitable and harassive to again permit the prosecution to establish these same matters, as if the first trial had never taken place" (citations omitted)); *People v. Pestana*, 762 N.Y.S.2d 786, 789 (Crim. Ct. 2003) ("The binding force of a judicial construction of a statute depends upon the court by which it was rendered and the rank of the tribunal in the judicial hierarchy. Thus the decisions of . . . the Appellate Division [are binding] on the Supreme Court; and so on down from the superior to the inferior judicatories."). If the First Department rules in Plaintiff's favor on appeal, that ruling will operate as de facto injunctive relief, functionally barring further prosecutions against Plaintiff. Thus, whether or not the First Department could grant injunctive relief is of no moment. Accordingly, the Court finds that the third condition of the *Younger* doctrine is satisfied.

### D. Extraordinary Circumstances

As noted above, when the *Younger* conditions are satisfied, the non-moving party can defeat *Younger* abstention only by demonstrating bad faith, harassment, or other extraordinary circumstances. *Kirschner*, 225 F.3d at 233–34. The party opposing "*Younger* abstention bears the burden of establishing that one of [these] exceptions applies." *Diamond "D" Constr.*, 282 F.3d at 198; *see also Smith v. Gribertz*, 887 F. Supp. 583, 586 (S.D.N.Y. 1995) ("The Supreme Court has repeatedly stressed that the exceptions to the abstention doctrine announced in *Younger* are very limited and that federal courts should enjoin state court criminal actions only rarely.").

Plaintiff now argues that because "it is an election year and the . . . [F]irst [D]epartment is unlikely to reach the issue until well into 2013, it would cause [Plaintiff] more harm for him to wait for the state court to resolve the issue." (Tr. 11.)[6]

---

[5] Plaintiff argues – and Defendants do not dispute (*see* Tr. 6) – that, pursuant to N.Y. C.P.L.R. section 5501(a), the state appellate court "is without power to grant injunctive relief which would not otherwise affect that final order." (Pl.'s Br. 5); *see* N.Y. C.P.L.R. § 5501(a) (McKinney 1997).

[6] Defendants provide a somewhat shorter – albeit rough – estimate of when the state appellate proceedings will conclude. (*See* Tr. 5 (noting that

This assertion – made for the first time at oral argument – plainly does not relate to bad faith or harassment. Therefore, to qualify as an exception to *Younger* abstention, the harm must constitute "some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982); *see Younger*, 401 U.S. at 54.

In this Circuit, there are "two predicates" for application of the extraordinary circumstances exception: first, there must be "no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation"; and second, "a finding [must] be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Diamond "D" Constr.*, 282 F.3d at 201 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 442 (1977)).

With respect to the first predicate, the state appellate process is almost by definition a "meaningful[], timely, and adequate[]" avenue for relief of Plaintiff's alleged constitutional violation. *See id.* Moreover, Plaintiff provides no support for his claim that the First Department is unlikely to resolve the case until well into 2013. *Cf. Aiona v. Judiciary of Haw.*, 17 F.3d 1244, 1250 (9th Cir. 1994) (holding that a state statute, which provided that judicial review of an administrative license revocation be held "as soon as is practicable," did not constitute such delay as to violate due process and warrant application of the "extraordinary circumstances" exception).

Even assuming the accuracy of Plaintiff's prediction regarding the timing of the resolution of the case in the state appellate courts, Plaintiff has not provided the Court with *any* information that would suffice to demonstrate the second predicate for the extraordinary circumstances exception – namely, that he would suffer "great and immediate harm" if the Court did not intervene. *See Davis v. Lansing*, 851 F.2d 72, 77–79 (2d Cir. 1998) (holding that burden of defending criminal prosecution and possibility that conviction will "have adverse consequences for [plaintiff's] defense of later prosecutions" are insufficient to constitute great and immediate harm); *cf. Diamond "D" Constr.*, 282 F.3d at 201 (noting that purported extraordinary circumstances must be "extraordinary" in the "'sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.'" (quoting *Kugler v. Helfant*, 421 U.S. 117, 125 (1975))).

Accordingly, the Court finds that the purported harm to Plaintiff of proceeding in state court does not constitute an "extraordinary circumstance" – or any other kind of exception to the *Younger* doctrine – justifying non-abstention.

### III. CONCLUSION

Because the Court finds that the three conditions for *Younger* abstention have been established and that none of the exceptions to *Younger* abstention has been triggered, the Court grants Defendants' motion in its entirety without prejudice.

---

these proceedings "could take perhaps six months to a year").)

The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 17 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: October 16, 2012
   New York, New York

      \*   \*   \*

Plaintiff is represented by Robert Marinelli and Samuel Van Dusen Lewis of the Law Offices of Robert Marinelli, 305 Broadway, 14th Floor, New York, New York, 10007.

Defendants are represented by Philip Sebastian Frank, Joshua J. Lax, Sheryl R. Neufeld, and Mary Theresa O'Flynn of the New York City Law Department, Office of the Corporation Counsel, 100 Church Street, New York, New York, 10007.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-16-12